## UNITED STATES v. PATRYAS.

No. 445. Argued February 11, 1938.—Decided February 28, 1938.

*Mr. Wilbur C. Pickett,* with whom *Solicitor General Reed, Assistant Solicitor General Bell,* and *Messrs, Julius C. Martin* and *W. Marvin Smith* were on the brief, for the United States.

*Mr. Warren E. Miller,* with whom *Mr. Stephen A. Cross* was on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

January 31, 1918, Stanley J. Patryas (respondent), then a soldier, purchased from the government a $10,000 yearly renewable War Risk Insurance contract which he permitted to lapse after his honorable discharge from the Army, July 29, 1919. June 28, 1927, while a patient at a Veterans' Government Hospital, he obtained reinstatement of his War Risk policy and immediately converted it into a five year renewable term policy upon which he paid premiums to June 1932. Claiming total permanent disability, the veteran obtained, in the District Court, a verdict and judgment on his reinstated policy. Finding the issues for the veteran, the jury fixed the date of permanent total disability at 1924—a date three years before his policy was reinstated.

The Court of Appeals affirmed.[1]

The government's right to contest this policy is limited by the following statutory provision: [2]

". . . policies of insurance . . . issued, reinstated, or converted shall be incontestable from the date of issuance, reinstatement, or conversion, except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United States, . . ."

The question here is:

Can the government, in the absence of fraud or bad faith, "contest" and defeat payment of total permanent disability insurance, sold to a World War veteran, on the ground that the veteran was totally and permanently disabled before the policy was reinstated and converted?

*First.* The government contends that "Congress has

---

[1] 90 F. (2d) 715.

[2] Sec. 307, World War Veterans Act, 1924, as amended July 3, 1930, c. 849, § 24, 46 Stat. 1001.

not, . . . authorized . . . insurance benefits for total, permanent disability existing prior to any contract of insurance on which the claim is made."

The original War Risk Insurance Act of October 6, 1917,[3] provided:

"That in order to give *every* commissioned *officer* and *enlisted man* and to *every member* of the *Army Nurse Corps* (female) and of the *Navy Nurse Corps* (female) when employed in active service under the War Department or Navy Department greater protection for themselves and their dependents . . . , the United States, upon application to the bureau and *without medical examination, shall grant* insurance against the death or total permanent disability of any such person . . ."

The War Risk Insurance Act must be considered in the light of its passage during the war, while men and women were being called into war service. This requires recognition of its generous and liberal purpose to provide " greater protection for (soldiers, sailors and nurses) . . . and their dependents."[4] Its passage indicated Congress conclusively presumed that every person, who had successfully undergone mental and physical examination for war service, was—when inducted into such service—insurable against death and total permanent disability.[5] The Act commanded that insurance against death and total permanent disability be granted, without medical examination, to *every* applicant who had previously been examined and accepted for war service. Congress manifestly intended by these sweeping provisions that policies should be granted without regard to the health of applicants and should be enforceable obligations against the government. Any other construction of this broad, war

---

[3] Sec. 400, War Risk Insurance Act of Oct. 6, 1917, c. 105, 40 Stat. 409.

[4] See, *United States* v. *Arzner*, 287 U. S. 470, 472.

[5] See, *United States* v. *Domangue*, 79 F. (2d) 647, 648.

time legislative grant to soldiers, sailors and nurses would take away the benefits Congress intended them to receive. The provisions of the War Risk Insurance Act are sufficiently comprehensive and inclusive to authorize its administrators to grant insurance covering past or future total permanent disability, if such action is found necessary to carry out its far reaching national plan and purposes.

*Second.* It is contended that the government can contest liability on the ground that the veteran was totally and permanently disabled prior to the reinstatement, despite the provision that such policy "shall be *incontestable* . . . except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United States, . . ." It is urged that this provision "has no application where, as here, the validity of the policy is not questioned and liability under it is denied solely on the ground that a loss has not occurred during the period of insurance protection." However, it is admitted that this policy did not "expressly exclude total permanent disability *occurring prior to insurance protection, as did the language of the original term contract.*"

This converted policy of insurance provided protection against loss from two causes: namely, death and total permanent disability. A provision making a policy "incontestable" except for certain clearly designated reasons, is wholly meaningless and ineffective if, after proof of the loss insured against, the policy can be contested upon grounds wholly different from those set out in the exception. The object of the provision is to assure the insured that payment on his policy will not be delayed by contests and lawsuits on grounds not saved by the exceptions.[6] Here, it has been established that the veteran is

---

[6] *Northwestern Mutual Life Ins. Co.* v. *Johnson,* 254 U. S. 96, 101, 102.

totally and permanently disabled. Yet his policy is contested on the ground that it does not insure against this disability because it existed before the policy was issued. If this defense can be interposed, his policy has never actually protected him against total permanent disability. Since permanent total disability is one of the two risks insured against in the policy, any contest (not based on the exceptions) which may prevent the policyholder's recovery for such admitted total permanent disability—existing while the policy is in force—is a "contest" forbidden by the "incontestable" provision.

No legal obstacle prevents parties, if they so desire, from entering into contracts of insurance to protect against loss that may possibly have already occurred. Marine insurance and ante-dated fire insurance policies frequently afford protection against risks which, unknown to the parties, have already attached.[7]

Even with the benefit of scrupulous good faith, it is not always easy to determine with complete certainty whether or not total permanent disability exists. This uncertainty may lead an insurer, after his own investigation, and for adequate compensation, to treat unknown past and uncertain prospective disability, upon the same basis. This case is an illustration. Here, the government has never admitted that the veteran is totally and permanently disabled. It not only issued him a policy against such disability—with complete knowledge of his then condition—but in this continued contest has denied that the policyholder was totally and permanently dis-

---

[7] *General Interest Ins. Co.* v. *Ruggles,* 12 Wheat. 408; see, *Hooper* v. *Robinson,* 98 U. S. 528, 537; *Pendergast* v. *Globe & R. Fire Ins. Co.,* 246 N. Y. 396; 159 N. E. 183; *Hallock* v. *Commercial Ins. Co.,* 26 N. J. L. (2 Dutch.) 268; see, *Springfield Fire & M. Ins. Co.* v. *National Fire Ins. Co.,* 51 F. (2d) 714, 718–719. A valid aleatory contract may be based on an unknown past event. 3 Williston, On Contracts, (Rev. ed.), § 888.

abled at any time—before, when, or after the policy was issued. There was also a sharp conflict of evidence on this disputed fact.

When a policy of disability insurance is issued after complete examination by the insurer and full and fair disclosure by both parties, there is no legal reason why the insurer cannot contract to afford full protection against loss resulting from past as well as prospective disability. This veteran's policy did not expressly limit liability to *prospective* total permanent disability. The, provisions of the policy in this regard contain a promise to pay the veteran "in . . . event of the total permanent disability . . . (and) Upon due proof of the total permanent disability of the Insured while this policy is in force, . . ." Original policies issued under the War Risk Act expressly excluded liability for total permanent disability incurred before the policy "was applied for." The deliberate omission, in the converted policies, of this previous exclusion, the language and purport of the original Act and its amendments, the administrative interpretations and legislative history, all throw a flood of light on the intention to include liability for disabilities existing prior to the issuance of the policies.

For more than a decade prior to 1934, (during which period this veteran's policy was purchased), the Bureau, unvaryingly observing the statutory mandate, announced and applied the practice that "insurance was incontestable except for the grounds specifically enumerated" in the incontestable provision. A *"subsequent rating* of permanent total disability *effective as of a date prior to the date of reinstatement,"* under this consistent administrative interpretation and practice, did "not affect the validity of such reinstatement." Because of court decisions and rulings by the Comptroller General tending to nullify and defeat this administrative practice [8] the Veterans'

---

[8] 9 Compt. Gen. 291; *Jordan* v. *United States,* 36 F. (2d) 43; *Golden* v. *United States,* 34 F. (2d) 367.

Administration urged the amendment of July 3, 1930, to confirm its practice and to strengthen and clarify the incontestable provision. For this purpose, the Administrator of Veterans' Affairs testified before the Senate Committee as to the necessity for this amendment:[9]

"This is a very sweeping amendment and will place beyond contest many contracts and policies of insurance which otherwise would be contestable. It is a well recognized principle of commercial insurance companies, however, and *in reality is only a clarification of the existing law which was practically nullified by a recent decision of the Comptroller General.*"

The Solicitor of Veterans' Affairs also testified:

". . . the present World War Veterans Act of 1924, as amended, contains a provision to the effect that where a policy is maintained in force for a period of six months, it should be incontestable, except for fraud or nonpayment of premiums. *We have followed that, and in all cases where . the policy has remained in force for six months* we have paid the claim, irrespective of the merits of it, unless there was fraud or failure to pay premiums. . . . However, under date of January 16, 1930, *notwithstanding the long practice of the bureau,* the Comptroller General, in the case of Mabry W. Woodall, held that if a man *was permanently and totally disabled* at the time he applied for a reinstatement of insurance, or conversion of insurance, . . . *the policy was not incontestable, the statute did not protect it . . .*"

In the *Woodall* case referred to, the Comptroller General had held:

". . . if the insured *was in fact* dead or *permanently and totally disabled, at the date of application, reinstatement or conversion,* . . . *the insurance was subject to subsequent contest.*

---

[9] H. R. 10381, 71st Cong., 2d Sess., Hearings Senate Committee on Finance, pages 90–91.

"Accordingly, the rule may be stated that *where the Veterans' Bureau has heretofore established or may hereafter establish the condition of permanent total disability at or prior to date of original application for insurance, or application for reinstatement and/or conversion of insurance, ... the insurance should be considered as invalid ..."*

The Senate Report on this amendment [10] stated:

*"The purpose is to make all contracts or policies of insurance incontestable from date of issuance, reinstatement, or conversion, for all reasons except fraud, nonpayment of premiums, or that the applicant was not a member of the military or naval forces of the United States. This incontestability would protect contracts ... where the applicant was not in the required state of health, or was permanently and totally disabled prior to the date of application, ...* It is appreciated that this is a broad provision, but it was felt that *it was necessary* in order to do justice to the veterans, ... and *to overcome decisions of the Comptroller General which practically nullified the section as it now exists."*

The conclusion is inescapable that Congress enacted the 1930 amendment in order to overcome the effect of the above rulings of the courts and the Comptroller General, and with the intention to sustain the Bureau's previous administrative interpretation and practice under the incontestable provision.

To resist payment of this veteran's insurance policy on the ground that he was totally and permanently disabled prior to the issue of the policy, is to "contest" payment within the generally accepted meaning of the word and violates the "incontestable" provision. The purchaser of a policy contract containing a provision that

---

[10] Senate Report No. 1128, p. 10, 71st Cong., 2d Sess., on H. R. 13174.

the insurer waives its right to contest except for fraud, nonpayment of premiums, and lack of military or naval service, is entitled to rely on the plain terms and inducements of the provision which limits the grounds for contest of liability to those specifically reserved.[11]   The incontestable provision here means that a claim of a veteran whose death or total permanent disability is established shall not be contested except for fraud, nonpayment of premiums or on the ground that the insured had not really been a member of the war forces of the nation or because he was included in Title 38, U. S. C., § 447.[12]   Congress evidently believed these exceptions afforded the government ample protection against impositions or unjust claims and intended to limit the right to contest these policies to the specific grounds reserved in the exceptions.   The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration or decision of this case.

[11] See, *Northwestern Mutual Life Ins. Co.* v. *Johnson, supra,* at 102.

[12] 38 U. S. C., § 518, and § 447.   This reference to § 447 excluded from the benefits of this incontestable provision any person who had been discharged or dismissed from the service on the ground that he was "guilty of mutiny, treason, spying, or any offense involving moral turpitude, or willful and persistent misconduct, of which he was found guilty by a court-martial, or that he was an alien, conscientious objector who refused to perform military duty or refused to wear the uniform, or a deserter, . . ."