## AMERICAN NAT. BANK & TRUST CO. OF CHICAGO v. UNITED STATES.

### No. 7681.

Circuit Court of Appeals, Seventh Circuit.

Dec. 13, 1941.

J. Albert Woll, U. S. Atty., of Chicago, Ill., Julius C. Martin, Asst. Atty. Gen., William M. Lytle and Benjamin F. Schwartz, Attys., Department of Justice, both of Chicago, Ill., Wilbur C. Pickett and Fendall Marbury, Attys., Department of Justice, both of Washington, D. C., for appellant.

Stephen A. Cross, of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment, entered April 5, 1940, in an action to recover on a War Risk Term Insurance contract. The suit was commenced March 7, 1932, by the Administrator of the estate of the insured, Robert Bruce Miller, deceased. On March 15, 1939, an additional count was filed in which the instant plaintiff, Administrator De Bonis Non of the estate of the insured, and Administrator of the estate of Margaret Miller, beneficiary named in the policy, who died December 27, 1929, was substituted.

The insured was inducted into the military service of the United States June 5, 1917, and honorably discharged September

29, 1919, suffering from a compensable disability, for which he had not been compensated. At the time of his death, February 17, 1921, there was due him sufficient unpaid compensation to purchase, if applied to the premiums when due, the insurance in suit. The Government does not dispute—in fact, admits—the situation as stated, but in its answer to the additional count, alleged as an affirmative defense that the insured became totally and permanently disabled on December 21, 1920, at a time when he was not entitled to any compensation. The plaintiff moved to strike the allegation relative to this affirmative defense and for summary judgment. The court allowed this motion and entered judgment in favor of the plaintiff.

The sole question which we are called upon to decide is whether the Government is entitled to defend upon the ground that the insured became totally and permanently disabled, at a time prior to his death, when there was no compensation due him.

A solution of the question must be found in a construction of Section 305 of the World War Veterans' Act as amended, Title 38 U.S.C.A., § 516, which, so far as here material, provides:

"Where any person has heretofore allowed his insurance to lapse, * * * while suffering from a compensable disability for which compensation was not collected and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability was or is entitled to compensation remaining uncollected, then and in that event so much of his insurance as said uncollected compensation, * * * would purchase if applied as premiums when due, shall not be considered as lapsed, * * *."

Plaintiff contends that by reason of this provision there was no lapse of the insurance, while the Government contends to the contrary.

We have considered heretofore and decided contrary to the Government's contention the precise question here presented. Florian v. United States, 7 Cir., 114 F.2d 990. This case was reversed by the Supreme Court on the ground that we were without jurisdiction. 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105. While we are of the opinion that on the merits we reached the right conclusion in the Florian case, the importance of the question merits further consideration.

In construing Section 305, both sides stress the purpose and intent of Congress in its enactment. We think, therefore, it is pertinent to refer to prior, as well as subsequent, legislation bearing upon the subject. The right to balance unpaid compensation against insurance premiums, so as to prevent the lapse of insurance, was first recognized by an amendment of August 9, 1921, to the War Risk Insurance Act, Sixty-Seventh Congress, 42 Stat. 156, included in a new section numbered 408. This amendment is as follows:

"Provided further, That where any soldier has heretofore allowed his insurance to lapse, while suffering from wounds or disease suffered or contracted in line of service, and was at the time he allowed his said policy to lapse entitled to compensation on account thereof in a sum equal to or in excess of the amount due from him in premiums on his said insurance, and has since died from said wounds or disease without collecting or making claim for said compensation, or being allowed to reinstate his said policy on account of his physical condition, then and in that event said policy shall not be considered as lapsed, and the Veterans' Bureau is hereby authorized and directed to pay to the beneficiaries of said soldier under said policy the amount of said insurance less the premiums and interest thereon at 5 per centum per annum compounded annually in installments as provided by law."

It will be noted that this amendment prevented a lapse only in the event the soldier "has since died" and therefore was for the sole benefit of the beneficiaries. It covers those contingencies where the soldier has died "without collecting or making claim for said compensation, or [without] being allowed to reinstate his said policy on account of his physical condition." It appears to have covered situations where the Government had, upon application, denied reinstatement of lapsed insurance because of the physical condition of the soldier.

The same Congress amended the amendment of August 9, 1921, effective March 4, 1923, 42 Stat. 1521, 1525, by including the following: " * * * and dies or has died from said wounds or disease, or becomes or has become permanently and totally disabled by reason thereof, without collecting said compensation, and at the time of such death or permanent total disability had or has suf-

ficient uncollected compensation to pay all unpaid premiums, * * * "

Consistent with this language, the amendment directed payment to the "said soldier or his beneficiaries." The last amendment, as well as the first, applied only where the soldier was "suffering from wounds or disease suffered or contracted in line of service." Section 305 first appeared in the World War Veterans' Act of 1924, Sixty-eighth Congress, 43 Stat. 626. The only material change in the Act of March 4, 1923, was to omit the requirement that the soldiers' disability be "suffered or contracted in line of service."

By Act of July 2, 1926, Congress further legislated, 516b, 38 U.S.C.A. in behalf of the beneficiaries of a deceased soldier who had allowed his insurance to lapse, by permitting the application of the sixty-dollar bonus which Congress had provided, in the event it had not been collected at the time of the soldier's death, to the payment of premiums so as to prevent the insurance lapse. Section 305 was again amended May 29, 1928, 45 Stat. 971, authorizing the revival of lapsed policies by utilization of compensation otherwise uncollectible because barred by limitations.

■ A study of this legislation demonstrates the Congressional solicitude toward the soldier and his dependents, and the consistent action taken in liberalizing the law so as to prevent lapsed insurance. In none of these numerous enactments is there any purpose disclosed to limit or narrow a right once bestowed. On the other hand they have been continually enlarged or broadened by the removal of restrictions so as to include situations not theretofore covered. It is in this light that Section 305 must be construed. It will be noted that the language thereof, pertinent to the question before us, "and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability" is, so far as now material, the same as that contained in the amendment of March 4, 1923. When the latter amendment was enacted, Congress had before it its amendment of August 9, 1921 (the first legislation dealing with lapsed insurance). This first legislation was solely for the benefit of beneficiaries of the soldier and appears to cover situations where the soldier died prior to the enactment. At any rate it was applicable only where the soldier had compensation due him and "has since

died." That the amendment of March 4, 1923, greatly enlarged the field wherein insurance was to be treated as non-lapsed, is apparent. It included instances where the soldier "dies or has died * * * or becomes or has become permanently and totally disabled." It included future, as well as past, contingencies. In the contingency of death, the insurance was payable to the soldier's beneficiaries as in the prior amendment, and in the contingency of permanent total disability, to the soldier himself. Thus the soldier was permitted, in case of permanent total disability, to share, during his lifetime, a part, if not all, of the benefit which theretofore had been enjoyed solely by his beneficiaries. As the insurance was payable in monthly installments, the extent of his enjoyment was dependent upon the length of time intervening between permanent total disability and death. Any uncollected installments at death were payable to his beneficiaries.

■ The Government's theory leads to the result that the rights of the beneficiaries were extinguished because the soldier, in his lifetime, was not in a position to take advantage of a provision which Congress had inserted for his benefit. In our judgment, such a result is contrary, not only to the legislative history and development of the legislation, but contrary to the plain language of Section 305. As we read that section, it was for the benefit of the soldier during his lifetime, and beneficiaries after his death. The rights of the beneficiaries were not changed or impaired except as the soldier exercised, during his lifetime, the right conferred upon him to share the insurance benefits. The insurance is effective upon either of two contingencies—(1) "dies or has died," or (2) "becomes or has become permanently and totally disabled." The first contingency is not dependent upon the absence of the second. The construction sought by the Government requires a reading into the Act of language to the effect that the contingency of death is to be given application only in the event the contingency of permanent and total disability had not occurred prior thereto. Furthermore, it permits utilization of the provision as a means to defeat lapsed insurance inconsistent with what appears as the plain purpose of Congress.

We think it is certain that it was not the purpose of Congress to accomplish such an incongruous result, and even more certain

that had it so intended, it was capable of employing specific language to that effect.

The gist of the Government's argument is that Section 305, by preventing a lapse of insurance, does no more for the Veteran and his beneficiaries than the Veteran could have done for himself by application for reinstatement under Section 304, 38 U. S.C.A. § 515. In other words, that the former section is limited by the latter. A similar contention on the part of the Government was denied in United States v. McClure, 305 U.S. 472, 59 S.Ct. 335, 83 L.Ed. 296. Section 304 provides for the reinstatement of lapsed yearly renewable insurance upon application made prior to July 2, 1927. In the McClure case, it was sought to impose this time limitation upon Section 305. In distinguishing the two sections, the court pointed out that reinstatement under Section 304 required action by the Veteran, that he was required to submit application, etc., while under Section 305, no action was required by the Veteran to revive a lapsed policy. On page 476 of 305 U.S., on page 338 of 59 S.Ct., 83 L.Ed. 296, it was said:

"* * * To have required action on his part would have been inconsistent with the manifest purpose of Congress to permit revival and continuation of insurance solely because the government had in its possession funds due the veteran and sufficient to pay for his insurance. * * *

"Although the right of reinstatement under Section 304 thus was again specifically restricted, Congress in no way indicated any intention to add the same restriction to the right of revival under Section 305 on which the present suit is based. Instead, the benefits under Section 305 were extended by the July amendment so as to permit beneficiaries to apply uncollected bonuses to the lapsed policies of deceased veterans. Congress again gave special attention to Section 305 in 1928 and authorized the revival of lapsed policies by utilization of compensation otherwise uncollectible because barred by limitations. * * *"

The court further said on page 477 of 305 U.S., on page 339 of 59 S. Ed. 296: "To hold that a lapsed yearly renewable term insurance policy cannot be revived under Section 305 would be to apply to that Section, by construction, the proviso which Congress attached only to 304. * * *"

In denying the Government's contention, the court, on page 478 of 305 U.S., on page 339 of 59 S.Ct., 83 L.Ed. 296, said: "* * * The benefits of the special provisions of Section 305 are extended to every veteran who has 'heretofore allowed his insurance to lapse, * * *.' The meaning of the words of the statute is apparent and we need not look beyond the language and statutory development of the War Risk Insurance Act. A lapsed policy, whether yearly renewable term or in converted form, comes within the provisions of Section 305."

The Government argues that the judgment in the instant suit is "unconscionable" and an "unwarranted discrimination against the Veteran who actually seeks reinstatement in favor of one who never did." This alleged discrimination is on the theory that the lapsed insurance could not have been reinstated by a Veteran totally and permanently disabled under Section 304, while in the instant case, judgment has been had in face of an allegation that the deceased Veteran was totally and permanently disabled during his lifetime. In the McClure case, as pointed out, the court rejected this discrimination argument so far as the time element was concerned, and allowed recovery by the beneficiaries of the deceased Veteran, even though such Veteran could not have reinstated such lapsed insurance during his lifetime.

Furthermore, we are of the view that if there is any unconscionable aspect presented in the instant matter, it would be the escape of liability on the part of the Government upon proof of an allegation that the deceased became permanently and totally disabled on December 21, 1920, (less than sixty days before his death) when no claim to that effect was made either by the Government or the deceased during the latter's lifetime. As was said in United States v. Patryas, 303 U.S. 341, 345, 58 S.Ct. 551, 554, 82 L.Ed. 883: "Even with the benefit of scrupulous good faith, it is not always easy to determine with complete certainty whether or not total permanent disability exists. * * *"

A trial at this late date upon such a dubious issue would be little more than an ex parte proceeding. This is so for the reason that the one whose physical condition is now sought to be placed in issue has been dead for twenty years, and it is a reasonable presumption that most

and perhaps all, of the witnesses upon whom the plaintiff must rely are no longer available. On the other hand, the Government presumably is in possession of all the records material to the asserted defense. While this observation is made relative to the unconscionable result argument, it further emphasizes that Section 305 should be construed to avoid a result which, in our judgment, might be worse than that portrayed by the Government.

The judgment is affirmed.