## CONTINENTAL ILLINOIS NAT. BANK & TRUST CO. OF CHICAGO v. UNITED STATES.

### No. 8819.

Circuit Court of Appeals, Seventh Circuit.

Oct. 30, 1945.

As Modified on Denial of Rehearing March 21, 1946.

Stephen A. Cross, of Chicago, Ill., for appellant.

Wilbur C. Pickett, of Washington, D. C., J. Albert Woll and William M. Lytle, U. S. Attys., both of Chicago, Ill., John F. Sonnett, of New York City, and Fendall Marbury, of Washington, D. C., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

EVANS, Circuit Judge.

In this action on a war risk insurance policy, judgment was for the defendant. It was based on the jury's finding that the veteran was permanently and totally disabled before he entered the war service, June 1, 1918.

Insured is an unfortunate physical wreck who has long suffered from dementia praecox and from what was later described as manic depressive psychosis. The nature and extent of his disability have either varied greatly or he has been the victim of embarrassingly conflicting and wholly irreconcilable findings and pronouncements by the United States Veteran Administration Board's Medical Examiners.

If incompetent mentally and if permanently and totally disabled from a time antedating his entry into the Army, his rights have been so unprotected as to provoke indignation.

From the agreed statement of facts, it appears that prior to May 29, 1918, insured registered for the draft and was on said date inducted into the military service. Prior thereto he stated in writing to the draft board that he had been treated for nervous disorders in May, 1915. His induction was after his examination by a medical officer of the draft board, and he was found physically qualified for general military service. He appealed from said decision of the draft board, and upon appeal was again examined and found physically qualified for general military service.

He served as a private from May 29, 1918 to December 9, 1918 when he was discharged upon a surgeon's certificate of "100% disabled." The medical records show that he was first treated after entry

into the military service, November 6, 1918. The medical board's record on December 9, "declared him unfit for service because of dementia praecox shown by history of abnormal action since 1915, with inability to adapt himself to the environment before or since being in service. The history shows that the condition existed prior to entry into the service and was not incurred in line of duty. He will need an attendant to accompany him when discharged. The medical officer who enlisted the soldier is not blamable."

Such report also contained the statement that insured stated he used to have blue spells lasting three or four days as often as once a month. In January, 1915 insured was beaten up by a crowd and also knocked about the head. Insured's people consider him a little "batty" during his spells and would watch him in his actions. During one of his depressive spells he tried to buy some carbolic acid. Later he tried gas but said it did not taste right, so he tried a gun but could not get the bullets to fit so gave it up as a "joke."

In 1915 he was sent into a hospital where he remained five weeks with a diagnosis of mental depression. In August, 1918, he was court martialed for being A.W.O.L.

The evidence justified the conclusion that insured should not have been inducted into the service, yet he was not totally and permanently disabled. He soon became so.

Shortly after June 1, 1918, defendant issued a war risk insurance contract in the sum of $10,000 upon which premiums were paid by insured to and including March, 1919. Thereafter the parties reduced the amount from $10,000 to $3,000 and the insured paid the premiums thereon until October, 1924, when disability benefits of insurance were awarded and paid to his conservator in monthly installments on the reduced insurance of $3,000. These payments ran from July, 1924 to April, 1926. At this time it was found by the U. S. Veterans Bureau that the insured had not become and was not permanently and totally disabled and thereafter premiums were paid by the insured on the principal amount of $2810. This was continued until May, 1927, when the life and disability insurance policy which he held was converted into a five year convertible term U. S. Government life insurance policy in the sum of $2810 and premiums were paid thereon to December 6, 1928, when there was awarded and paid to the conservator monthly benefits upon said insurance until March 5, 1938. On said date (March 5, 1938) it was again found by the U. S. Veterans Bureau that the insured was not in fact permanently and totally disabled. Thereafter premiums were paid on $1604, being the amount of insurance still in effect, until the date of the judgment herein.

In June, 1931, the claim for insurance benefits based on alleged permanent and total disability from June 30, 1918 was filed, which said claim was rejected by the Board of Veterans.

The instant action was instituted in February, 1944 by the conservator. Two questions were submitted to the jury who made answer thereto as follows: 1. Has A. O. Peterson ever at any time become permanently and totally disabled? Answer either "Yes" or "No." Answer: Yes. If your answer to the first question be "Yes," then answer the following question: Second: On what date did A. O. Peterson become permanently and totally disabled? Answer: Date: Before June 1, 1918.

Defendant relies on a factual defense, to-wit, prior total permanent disability. In so doing, it repudiates or rejects its records which contained the following deliberate findings by it made:

(1) When he was up for induction into the armed services defendant found the insured to be physically qualified for general military service.

(2) Upon appeal from the ruling of the draft board, the United States military authorities caused insured to be reexamined and again found him to be physically qualified for military service.

(3) He was kept in service and served as a private from May 29, 1918 to December 9, 1918.

(4) Defendant dealt with insured as a sane person and issued to him its insurance policy and deducted premiums from his pay. It negotiated with him and modified the said insurance policy by changing the amount from $10,000 to $3,000 and thus by implication recognizing him as a competent person and a veteran in good standing.

(5) He was court martialed for being A.W.O.L. This was hardly consistent with the assumption that he was totally and permanently disabled because suffering from dementia praecox.

(6) In 1926 the U. S. Veterans Bureau found and determined that the insured had

not become and was not permanently and totally disabled.

(7) On March 5, 1938, it was found by the U. S. Veterans Bureau that the insured was not in' fact permanently and totally disabled.

Equally significant and equally inconsistent with the defendant's present position is defendant's answer filed herein, where in reply to plaintiff's allegation, appearing in his complaint, that he was permanently and totally disabled, defendant denied the disability allegation. It expressly stated, "* * * answering further the allegation contained in this paragraph of the complaint, defendant admits disability benefits of insurance were awarded to and paid to the Illinois Merchants Trust Company as conservator for the insured in monthly installments of $17.25 each, from July 9, 1924 to April 8, 1926 when it was found and determined by the U. S. Veterans Bureau that the insured had not become and was not permanently and totally disabled. * * * and until March 5, 1938 when it was again found that the insured was not in fact permanently and totally disabled."

In no place in the answer did the defendant allege that insured was totally and permanently disabled when the original war risk insurance was issued although it does appear that:

"* * * defendant further answering * * * states that if the insured was permanently and totally disabled at any time *when his contract of war risk yearly renewable term insurance was in full force and effect through premium payments,* or at a time when * * * his insurance contract might otherwise have been revivable under the provisions of Sec. 305 of the World War Veterans Act, as amended, [38 U.S.C.A. § 516], he was so permanently totally disabled on and prior to the date when such war risk yearly renewal term insurance was applied for and granted to him by the Government,—and such insurance contract, therefore, was by the terms thereof effective as life insurance only and not as insurance against such disability."

The date of the issuance of said war risk yearly renewable term insurance was May, 1927.

It would seem that if ever a party was estopped to assert the insured was permanently and totally disabled when he entered the service the defendant herein should be estopped. It argues however that being the United States, the doctrine of estoppel does not apply to it. In other words, although it drafted the insured and found him fit for military service, not once but twice, after he had told the examining board of physical troubles, it now refuses to pay its insurance policy obligation because, so it says, insured was permanently and totally disabled when he entered the service.

More than this, when plaintiff later asked for benefits because of permanent and total disability, defendant not once but twice, with a lapse of years between the rulings, caused insured to be examined and pronounced him to be not totally disabled. Later, when insured's condition became such that no possible denial of his total disability could be maintained, defendant asserts that insured was totally disabled all the time and therefore it is not liable.

Assuming that defendant may not be estopped, honor and integrity call for the admission of the established facts upon which the estoppel is based. It now asserts what for years it denied. It now disputes the irresistible inference which arose from insured's induction into the service. It asserts that it exchanged the policy it originally issued for a new one which contained a defensive clause now advanced by defendant to bar recovery (except for death) on the ground that the insured was totally and permanently disabled when the policy was issued. It asserts such a change of policy when dealing with a veteran suffering from dementia praecox so badly that he had, from a date prior to May 1st, 1918, been totally and permanently disabled—and the evidence of disability related to impaired mentality.

We think it should not advance such a defense. Moreover, we think it can not do so successfully.

Congress has seen fit to make all war risk insurance policies incontestable except for fraud or non-payment of premiums. Sec. 307, World War Veterans' Act of 1924, Amendment of 1930, 38 U.S.C.A. § 518. It further provided that the incontestable clause "shall be deemed to be effective as of April 6, 1917." 38 U.S.C.A. § 518.

Defendant argues that this incontestable provision of the statute does not, however,

bar the defense that said policy does not cover antecedent disability. It bases this contention upon a Treasury Bulletin which allegedly is part of the policy and reads:

"If the insured became totally and permanently disabled before this policy was applied for, it shall nevertheless be effective as life insurance, but not as insurance against such disability."

This court in United States v. Patryas, 7 Cir., 90 F.2d 715, affirmed in 303 U.S. 341, 58 S.Ct. 551, 82 L.Ed. 883, held otherwise. See also Continental Illinois National Bank & Trust Co. v. United States, 7 Cir., 123 F.2d 1013.

Defendant seeks to distinguish the Patryas case on the ground that the policy in question is a converted policy which expressly limited the liability to prospective permanent and total disability. We can not accept the restricted application of the Patryas holding.

While we do not think the Patryas ruling should be so limited, it is worthy of note that the said converted policy was one which the defendant negotiated with the assured, at a time when he was mentally incompetent and unable to transact business. At least the evidence justifies such a finding, although the trial court never considered this issue nor submitted it to the jury.

Supporting this statement, however, is evidence furnished by the defendant and found in the report of the Board of the Medical Officers of the U. S. Army. It is there stated that plaintiff's dementia praecox was manifested at that time by "silly laughter, incoherent production both written and spoken and no insight" * * * "he can not be discharged from military control without danger to himself and others and will need an attendant to accompany him when discharged." Defendant relies upon a modification of its contract negotiated with a veteran in such a mental state.

We think recovery should be had in this case for three good reasons:

(2) The policy which was originally issued was not validly changed because insured in 1927, when the new policy became effective, was permanently and totally disabled, and the disability was traceable to mental incompetency.

(3) The statute which makes the policy incontestable overrides and defeats defendant's effort to limit or curtail such incontestability.

The judgment is reversed, with directions to enter one in accordance with the views here expressed.