## MOORE *v.* TAGGART

No. 40778          April 28, 1958          102 So. 2d 333

*Carter & Van Every,* Columbus, for appellant.

*Sams & Jolly,* Columbus, for appellee.

KYLE, J.

This case is before us on appeal by Mrs. Millie Moore, plaintiff in the court below, from a judgment of the Circuit Court of Lowndes County, rendered in favor of Mrs. Betty Taggart, the defendant, in an action for damages for personal injuries alleged to have been sustained by the plaintiff as a result of the defendant's negligence in the operation of an automobile driven by the defendant and in which the plaintiff was riding at the time of the injury.

The record shows that the appellant and the appellee were employees of the Caledonia Manufacturing Company at the Company's garment plant located in the Town of Caledonia, in Lowndes County. Both parties lived on or near State Highway No. 12, several miles east of Caledonia. The appellant rode to the plant each morning with the appellee, as a share-the-expense guest, in a 1951 Ford automobile driven by the appellee, which was owned by the appellee's husband, E. J. Taggart, and when the day's work was done, the appellant returned to her house in the same automobile. The accident complained of occurred on September 14, 1956, about 4 o'-clock P. M., a few minutes after the appellee and the appellant left the plant to return to their homes. While the appellee was driving the car southwardly along a narrow street running from the garment plant to Main Street in the Town of Caledonia, the appellant and the

other two occupants of the car observed another automobile, which had left the plant ahead of them and was proceeding in the same direction, come to a stop at the Main Street intersection where there was a stop sign. The appellee applied her foot brake but the foot brake failed to function properly and the appellee's automobile collided with the automobile in front of her which had come to a stop. The appellant was thrown forward and injured as a result of the impact.

The plaintiff alleged in her declaration that the defendant was negligent in failing to maintain a proper lookout as she approached the Main Street intersection for other vehicles using the street or parked thereon, and in failing to bring her automobile under proper control immediately after she saw the other automobile parked in the street at the stop sign, and in failing to operate her automobile in a careful and cautious manner at a reasonable rate of speed, and in failing to have the brakes on her automobile properly functioning, so that said brakes would stop the automobile in cases of emergency and in case it became necessary to stop it. The plaintiff further alleged that the defendant's negligence in the above mentioned particulars was the proximate cause of the collision, as a result which the plaintiff was injured.

The defendant in her answer denied the material allegations of the complaint, and as affirmative matters of defense, the defendant averred that the automobile which she was driving was in good mechanical condition prior to the accident; that the brakes of said automobile were in good working order, until just before the collision; and that the accident was due to the failure of the brakes on the defendant's car to function properly, and that said brake failure created a sudden emergency that was due to no fault of the defendant. The defendant also averred in her answer that the plaintiff received no injuries as a result of said accident.

The case was submitted to the jury upon the testimony of the witnesses and the instructions of the court, and

the jury returned a verdict for the defendant. The plaintiff's motion for a new trial was overruled, and judgment was entered for the defendant.

The appellant assigns as errors the following: (1) That the court erred in refusing to sustain the plaintiff's motion for a directed verdict against the defendant on the question of liability and the submission of the case to the jury solely on the question of the amount of damages; (2) that the court erred in granting to the defendant certain instructions which will be discussed later in this opinion; and (3) that the court erred in refusing to grant the appellant a new trial on the ground that the verdict of the jury was contrary to the overwhelming weight of the evidence, and so unreasonable as to evince bias and prejudice on the part of the jury.

There is but little conflict in the testimony of the witnesses. The defendant, Mrs. Betty Taggart, was called to testify as an adverse witness by the plaintiff. She testified that she was living on Route 1, Vernon, Alabama, on September 14, 1956, when the above mentioned accident occurred, and was working at the Caledonia Manufacturing Company's garment plant; that she drove from her home to the plant each day in a 1951 Ford automobile owned by her husband; and that the plaintiff, Mrs. Millie Moore, and Mrs. Icey Perkins rode in the car with her from their homes to their work at the garment plant. Each of them contributed $1.50 a week to help pay for the gasoline. She stated that she and Mrs. Moore and Mrs. Perkins got off from work at 4:00 o'clock P. M. on September 14, 1956, and started home; that they left the garment plant in the above mentioned automobile and drove southwardly toward the Main Street intersection, and as their car came over a rise about 75 feet north of the point of the Main Street intersection she observed a car stopped at a stop sign at the intersection. She stated that she was driving about ten miles an hour when she observed the car stopped at the

stop sign; that she tried to apply her brakes, but the brakes did not function, and she shifted her gear into second in an effort to slow down, but she hit the rear end of the parked car before she could bring her own vehicle under control. She stated that she was not going over five miles an hour at the time of the collision.

Mrs. Taggart stated that the brakes on her car had been repaired about three or four weeks before the accident occurred and were in working order when she left the garment plant. She stated that the foot brake failed to work as she approached the Main Street intersection because of a broken wheel cylinder. She was asked if she pulled up or tried to apply the emergency brake; and she said that she did not. She stated that she knew the car had an emergency brake on it, but she said, "I forgot all about it." She was later asked what was the condition of the emergency brake on her automobile, and her answer was, "They were all right the last time we used them." Mrs. Taggart admitted that she had signed a statement for Mrs. Gladis Freeman, the owner of the parked car, immediately after the accident, in which she stated that the accident occurred as a result of her own fault.

Mrs. Millie Moore, the plaintiff, testified that she was riding in the car with Mrs. Taggart at the time the accident occurred. Mrs. Perkins was in the middle, and Mrs. Moore on the other side of Mrs. Perkins. When they came over a little slanting hill they saw that Mrs. Freeman was stopped down there at the intersection. Mrs. Taggart could not get her car stopped, so it hit Mrs. Freeman and knocked her car across the road. When the car in which she was riding hit Mrs. Freeman's car, the jolt knocked her off the seat, threw her down on the floor board and into the dashboard. The plaintiff was asked what Mrs. Taggart did to try to control the automobile. Her answer was. "I think the most thing she done was getting excited and went to swerving the car

all over the road.'' She stated that Mrs. Taggart did not use the emergency brake. The plaintiff stated that she was injured as a result of the mishap; that she went home, got sick at the stomach and started vomiting, and went to bed; and the next morning she got up and went to a doctor. The doctor was not equipped to make an x-ray examination, but gave her a prescription of medicine to keep her easy, and she later went to Vernon Hospital for an x-ray examination, and stayed there from Saturday until Tuesday. She then went to the Columbus Hospital and was treated by Dr. Elton Thomas, and was still under the treatment of Dr. Thomas at the time of the trial.

T. L. Austin, a motor vehicle mechanic, testified that he was familiar with the braking system of a 1951 Ford automobile, and about all other kinds of braking systems; that the hand brakes are hooked up with the back wheel brakes, and there is a lever that works the hand brakes and a slot of iron that goes right under the master cylinder that works nothing but the hand brakes. He was asked whether, if the foot brakes were to give away suddenly, the emergency brakes would stop the automobile. His answer was, ''If your cables are adjusted up properly that hand brake will slide your back wheels.'' He stated that emergency brakes were exactly what they were called, ''emergency brakes.'' If the master cylinder gives away or the wheel cylinder gives away, if you have reasonably good emergency brakes, that will stop the car anyway.

Dr. Elton Thomas testified that he saw Mrs. Moore the first time on September 25, 1956; that he made x-ray pictures of her back, and the results of his examination led him to believe that she had a ruptured disc. Dr. Thomas explained in detail the nature of Mrs. Moore's injury, and stated that he had advised her to see an orthopedic surgeon. He could not tell himself whether an operation was needed or advisable.

Mrs. Icey Perkins, who was riding in Mrs. Taggart's automobile at the time the accident occurred, also testified during the trial. Her account of the accident was substantially the same as that given by Mrs. Taggart. Several other witnesses also testified; but it is not necessary that we undertake to summarize their testimony in this opinion.

We think there was no error in the court's refusal to direct a verdict for the plaintiff on the issue of liability. But the judgment of the lower court must be reversed and a new trial granted on account of errors in the instructions granted to the defendant relating to the sudden emergency doctrine in cases of this kind.

The court granted to the defendant the following instructions on the doctrine of sudden emergency:

*Instruction No. 1:*

"The court instructs the jury for the defendant that the driver of a motor vehicle is not an insuror of the safety of her passengers and that if you believe from the evidence that the defendant, Mrs. Taggart, had no knowledge of any defect in her automobile and could not with reasonable diligence have ascertained that there were any defects likely to produce an accident, and if you further believe from the evidence that the sole proximate cause of the accident was the sudden failure of the defendant's brakes of which she had no knowledge and of which she could have obtained no knowledge by reasonable diligence, then you should find for the defendant."

*Instruction No. 2:*

"The court instructs the jury for the defendant that under the law when a person is confronted with a sudden emergency not of her own making and is by reason thereof placed in a position of peril to herself without sufficient time in which to determine with certainty the best thing to do, she is not held to the same accuracy of judgment as is required of her under ordi-

nary circumstances, and in this instance if you believe from the evidence that the plaintiff was immediately prior to the collision confronted with a sudden emergency which she did not create and was by reason thereof placed in a position of peril to herself then in weighing the evidence in determining whether or not defendant was guilty of negligence at the time of the collision you may take into consideration all the facts and circumstances as shown by the evidence and the situation with which the driver was then confronted.''

*Instruction No. 3*:

''The court instructs the jury for the defendant that under the law when a person is confronted with a sudden emergency not of her own making and is by reason thereof placed in a position of peril to herself without sufficient time in which to determine with certainty the best thing to do, she is not held to the same accuracy of judgment as is required of her under ordinary circumstances and the court further instructs you that if you believe from the evidence that Mrs. Taggart, the defendant, was so confronted with such an emergency and if you further believe that under the circumstances with which she was confronted she did everything within her power to avoid the collision, you should return a verdict for the defendant.''

▉▉ None of the defendant's instructions undertook to define ''sudden emergency''. In two of the instructions the jury was told that the sudden emergency, to be available as a defense, must be a sudden emergency not of the defendant's own making. But as stated by this Court in Callaway v. Haddad, 83 So. 2d 825, Miss. 1955), merely stating to the jury that they must believe that the emergency was not of the defendant's own making was not enough. The instructions should have further stated that after the emergency arose the defendant exercised such care as a reasonably prudent and capable driver would use under the unusual circumstances. ▉▉

This is made clear in 1 Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 1, Part 2, Perm. Ed., Sec. 668, pp. 538-545, where the rule is stated as follows:

"When one is confronted with a sudden peril requiring instinctive action, he is not, in determining his course of action, held to the exercise of the same degree of care as when he has time for reflection, and, in the event that an automobilist suddenly meets with an emergency which naturally would overpower the judgment of a reasonably prudent and careful driver, so that momentarily he is thereby rendered incapable of deliberate and intelligent action, and as a result injuries a third person, he is not negligent, provided he has used due care to avoid meeting such an emergency and, after it arises, he exercises such care as a reasonably prudent and capable driver would use under the unusual circumstances, which is usually for the jury.

"In other words, some allowance must be made for the time required for the requisite mental and physical operations of a motorist in applying his brakes or doing whatever else is necessary when an emergency arises."

The rule as stated above was cited by this Court with approval in Jones v. Dixie Greyhound Lines, Inc., (1951), 211 Miss. 34, 50 So. 2d 902.

Section 8249, Code of 1942, provides as follows:

"(a) Brake equipment required.

"1. Every motor vehicle, other than a motorcycle, when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating

mechanism shall not leave the motor vehicle without brakes on at least two wheels.''

■■ The emergency brake is for the purpose of bringing the car to a stop in a sudden or unexpected occurrence or circumstance, and is to be used in addition to the foot brake, and also in case the foot brake should be out of order or unable to bring the motor vehicle to a stop. Due care as to brakes requires that the operator be familiar with their use and that he use them, if need be, to avoid accidents. 60 C. J. S., 639, Motor Vehicles, par. 261, and cases cited.

■■ The first instruction granted to the defendant in this case was erroneous in that it assumed by the use of the words ''failure of the defendant's brakes'' that there was evidence in the record upon which the jury might find that both braking systems of the defendant's automobile were defective, when in fact there was no evidence to show that the emergency brake was in any way defective. The appellant herself testified that ''the last time we used it, it was all right.'' The first instruction was also erroneous, in that it omitted entirely the statement that after the emergency arose, the defendant exercised such care as a reasonably prudent and capable driver would use under the unusual circumstances. See Callaway v. Haddad, supra.

■■ The defendant's second instruction was likewise erroneous in that it omitted any reference to the defendant's duty after the emergency arose, to exercise such care as a reasonably prudent and capable driver would use under the unusual circumstances.

The defendant's third instruction was erroneous in that it told the jury in effect that if they believed from the evidence that the defendant was confronted with a sudden emergency as therein described, and that under the circumstances with which she was confronted she did everything within her power to avoid the collision, they should return a verdict for the defendant. The

proper test as to the defendant's negligence was not, whether the defendant, after the emergency arose, "did everything within her power to avoid the collision," but whether, after the emergency arose, she exercised such care as a reasonably prudent and capable driver would use under the unusual circumstances.

The above mentioned instructions granted to the defendant were erroneous and misleading to the jury under the facts in this case; and the errors in those instructions were not cured by the instructions granted to the plaintiff.

██ ██ The evidence in this case shows that the defendant was driving at a rate of speed of not more than ten or twelve miles an hour when she came over the rise in the street running southwardly toward the Main Street intersection, and saw the Freeman car parked in the street at the intersection. Whether the defendant was negligent in failing to exercise such care, after her foot brake failed to work, as a reasonably prudent and capable driver would have used under the unusual circumstances to avoid an accident, and whether such negligence, if any, was the proximate cause of the plaintiff's injury, were questions for the jury to decide under proper instructions of the court. Because of the errors pointed out in the defendant's instructions the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

*McGehee, C. J.*, and *Hall, Arrington* and *Gillespie, JJ.*, concur.