**AETNA CASUALTY & SURETY CO., Plaintiff,**

v.

**Louis L. CONDICT, Defendant.**

**Civ. A. No. J74–300(N).**

United States District Court,
S. D. Mississippi,
Jackson Division.

May 1, 1976.

William L. Colbert, Jr., Satterfield, Shell, Williams & Buford, Cary E. Bufkin, Jackson, Miss., for plaintiff.

Rufus Creekmore, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

NIXON, District Judge.

The plaintiff, Aetna Casualty and Surety Company (Aetna), a Connecticut corporation qualified to do and doing business in the state of Mississippi with its principal place of business in the state of Connecticut, filed this diversity subrogation action against Louis L. Condict, a resident citizen of the state of Tennessee, seeking to recover, as an alleged uninsured motorist, an amount in excess of $10,000.00, paid by Aetna to its insureds by virtue of uninsured motorist and medical pay provisions of its policy. This cause of action arose as a result of personal injuries sustained by the named insured's husband, Marvin Prestridge, and his mother, Mrs. Jessie L. Prestridge, in a collision of the Prestridge's 1968 Chevrolet ½ ton pick-up truck and the de-

fendant's 1967 2½ ton heavy-duty Chevrolet flatbed truck.

The defendant has denied the plaintiff's charge of negligence and has affirmatively pleaded that he was not uninsured, but on the contrary, that his Chevrolet truck was insured by the plaintiff, Aetna, at the time of the collision by an endorsement to its policy insuring another of his vehicles.

The defendant counter-claimed against Aetna for attorney's fees and all expenses incurred in defending this action, alleging that the plaintiff owed him the duty to defend, which it refused to undertake, despite his request.

The issues before the Court are (1) whether the defendant, Louis L. Condict, was an insured or an uninsured motorist at the time of this collision, and (2) if he was an uninsured motorist, whether he was guilty of negligence which proximately caused or contributed to cause the collision. These issues will be treated in reverse order so that this case may be ripe for final disposition in the event of an appellate reversal of this Court's adjudication of the coverage question.

This case was tried to the Court without a jury, and based on all of the evidence of record, this Court makes the following Findings of Fact and reaches the following Conclusions of Law.

## FINDINGS OF FACT

On August 13, 1973 at approximately 11:30 p. m. a collision occurred between a 1968 pick-up truck being operated by Marvin Prestridge in which his mother, Mrs. Jessie L. Prestridge, was a passenger, and a disabled 2½ ton 1967 Chevrolet flatbed truck owned and operated by the defendant, Louis L. Condict. This collision occurred in a rural area outside a business or residential district, approximately eight miles west of McComb, Mississippi on State Highway 24, a 24 foot wide two-lane paved highway divided by a white, broken centerline, with 8 foot shoulders on each side, which ran in an easterly and westerly direction.

On the night of the collision the defendant was driving his 2½ ton flatbed truck on which he was transporting to his home in Memphis, Tennessee an HD7G Allis Chalmers tractor or front-end loader weighing approximately 18,000 pounds which he had purchased in Baton Rouge, Louisiana. The two right rear tires blew out on the truck causing it to tilt to the right, resulting in the front of the bed striking the blacktop highway causing the end loader to be thrown completely off the south side of the paved highway coming to rest approximately one foot off the south edge of the eastbound lane and resulting in the truck making a complete turn in the highway coming to rest headed back in a westerly direction in the eastbound lane with approximately three–four feet thereof occupying the north or westbound lane. Condict and his passenger, friend and sometimes business associate, John Dancy, climbed out of the truck through a window after Condict tried unsuccessfully for approximately five minutes to start the engine of the truck which had stopped running. When he attempted to start the engine, the lights on the truck were very dim and eventually went completely out after the engine failed to turn over. Neither Condict nor Dancy ever looked under the hood of the truck in order to determine why it would not start, and they, with the assistance of a resident of the area, unsuccessfully attempted to push the truck from the highway.

Condict placed three red reflectors on the highway, one to the west and one to the east of the stalled truck on which no lights were burning and within fifty feet or less of the disabled vehicle, and placed the third one at the right rear corner thereof, all three reflectors being placed in the eastbound or south lane. Shortly thereafter they heard the Prestridge vehicle approaching from the east and Dancy ran in that direction with a flashlight in an unsuccessful attempt to warn the approaching vehicle of the presence of the truck.

Marvin Prestridge, a 20-year veteran tractor-trailer cross-country truck driver was driving his wife's ½ ton Chevrolet pick-

up truck in a westerly direction from Jackson, Mississippi toward Baton Rouge, Louisiana at approximately 50–55 miles an hour in a 65 M.P.H. speed zone, with his mother, Mrs. Jessie L. Prestridge, as a passenger therein. He failed to see any reflectors, lights or warning signals of any kind in the area of the defendant's disabled truck and did not see the truck until he was approximately 80 to 100 feet therefrom at which time he applied his brakes but was unable to prevent the left front of the pick-up which he was driving from striking the right bed of the truck which extended over into his westbound lane of traffic, resulting in serious injuries to Mr. Prestridge and his mother. Marvin Prestridge's injuries consisted of a fractured skull and brain concussion, two ruptured discs requiring operative procedures and severe lacerations of the face resulting in his being hospitalized for approximately two months following the accident and his being disabled for approximately four months at a salary loss of $2500.00. His mother suffered a fractured shoulder and knee as well as lacerations, resulting in her hospitalization for a period of five days and her being disabled for approximately eight months. She was self-employed in the produce business, and her loss of earnings was approximately $4,000.00. The plaintiff, Aetna, paid the medical expenses of each in a total amount of $1,636.00 and paid Mrs. Prestridge and her son the respective amounts of $4,000.00 and $5,000.00 under the uninsured motorist provision of its policy.

Before leaving Hernando, Mississippi with the truck and proceeding to Baton Rouge, Condict checked its tires and driveshaft and when he later stopped at a service station outside Jackson in order to refuel, he noticed that the tires on the secondhand truck which he had just bought for $950.00 in August, 1973 from Dancy who had acquired it at an auction in Arkansas in June, were worn and "looked awful". He nevertheless proceeded to Baton Rouge where he "aired up" the tires to 70 pounds before loading the end loader onto the bed of the truck. This end loader weighed approximately 18,000 pounds, and Condict admitted that he knew that the recommended total gross weight load of the truck was 18,000 pounds, which included the weight of the truck. After the loading and chaining was completed, Condict and Dancy left Baton Rouge at about dark on their journey to Holly Springs, Mississippi and were traveling east on Highway 24 when the rear tires blew out.

## THE NEGLIGENCE ISSUE

Miss.Code 1972 Ann. § 63–7–69 requires that warning devices such as flares, fuses, flags, reflectors be carried in trucks, and § 63–7–71(1) provides that "[w]henever any motor truck or bus is stopped upon the highway except for the purpose of picking up or discharging passengers, or its lighting equipment is disabled during the period when lighted lamps must be displayed on vehicles and such motor truck or bus cannot immediately be removed from the main traveled portion of the highway outside of a business or residence district, the driver or other person in charge of such vehicle shall cause such flares, fusles (sic), reflectors or other signals to be lighted or otherwise placed in an operating condition and placed upon the highway, one at a distance of approximately one hundred feet to the rear of the vehicle, one approximately one hundred feet in advance of the vehicle, and the third upon the roadway side of the vehicle". Failure to comply with this requirement constitutes negligence. *Powers v. Malley,* 302 So.2d 262 (Miss.1974); *Planters Wholesale Grocery v. Kincade,* 210 Miss. 712, 50 So.2d 578 (1951). The Mississippi Supreme Court has held that the operator of a truck or bus must be allowed a reasonably sufficient time to enable him to place the prescribed warning signals, and the requirement that the signal be put out "immediately" means only that it be put out with reasonable and proper diligence, or promptly under all the facts and circumstances of the case; furthermore, the foregoing statute was not intended to establish absolute liability regardless of fault, and a violation may be justified on the ground of an emergency not attributable to the operator or

may be excused by reason of impossibility of compliance due to circumstances beyond his control, as where he did not have sufficient time to comply therewith. *Hankins v. Harvey*, 248 Miss. 639, 160 So.2d 63, 69 (1964). The issue of whether or not the driver of a bus or truck acted with reasonable promptness in placing the required signals and exercised that degree of care and caution which an ordinarily careful and prudent person should exercise under the same or similar circumstances is a fact issue in each case.

In the case sub judice, this Court finds that the defendant, Condict, did not comply with the foregoing statutory requirement for two reasons, (1) he placed the reflectors in the eastbound lane within 50 feet to the east and west of his disabled vehicle; (2) he did not place the third reflector upon the roadway side of the vehicle, but instead placed it at the right rear corner of the truck which was disabled in this area outside a business or residential area. Thus, his violation of this statutory law constituted negligence per se.

Miss.Code of 1972 Ann., § 63–3–903 provides:

(1) No person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of any highway outside of a business or residence district when it is practical to stop, park, or so leave such vehicle off such part of said highway. In every event, however, a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available for a distance of two hundred feet in each direction upon such highway.

(2) This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of the highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

The word "impossible" which appears in paragraph (b) has been construed to mean "not reasonably practical" and the question of whether it is reasonably practical for the driver of a truck to move all or part thereof off the traveled portion of the highway onto the shoulders when an accident occurs is a question to be decided by the finder of fact. *Hankins v. Harvey*, supra, 160 So.2d at 70–71.

If a vehicle is disabled on a public highway so that it cannot be moved under its own power, if it can be moved from the traveled portion of the highway, it is the duty of the driver to do so, if reasonably practical. *Maness v. Illinois Central Railroad Co.*, 271 So.2d 418, 426 (Miss.1972); *Belk v. Rosamond*, 213 Miss. 633, 57 So.2d 461, 465 (1952). *See also, Anderson v. Eagle Motor Lines, Inc.*, 423 F.2d 81 (5th Cir. 1970).

In the case sub judice, it is established that subsequent to the defendant's truck coming to rest after the blow out, he attempted to restart the engine which had stopped running, but that it "would not turn over." Condict testified that his lights were very dim when he first began to try to start the truck and then completely went out prior to the time of the collision in question, although his passenger testified that the lights were completely out at the time that he began to try to start the engine. Earlier on the day in question on their way to Baton Rouge, it was discovered at the service station where he had stopped because of carburetor trouble, that the battery cable on the truck was deteriorated and a new one was purchased and installed. After trying for approximately five minutes to start the truck and then crawling out of the windows, they unsuccessfully attempted to push the vehicle off the road with the help of a nearby resident, but at no time in the intervening ten or fifteen minute period did the defendant or his passenger ever open the hood of the truck in order to determine why the engine would

not crank, and it was discovered by Condict later that the battery cable had apparently come loose and prevented him from starting the vehicle. We are of the opinion that Condict thus violated the requirement of the foregoing statute and that he was thereby negligent.

If we are mistaken in the foregoing conclusion, compliance with the foregoing statute is immaterial if Condict was guilty of negligence which resulted in the foregoing dangerous situation and this negligence continued over into any other accidents that might have foreseeably occurred as a result of the dangerous situation resulting from his negligence. *Huff v. Boyd,* 242 So.2d 698, 703 (Miss.1971); *Whitten v. Land,* 188 So.2d 246 (Miss.1966).

The owner or operator of a vehicle is charged with the duty of exercising reasonable care to see that his vehicle is in a reasonably safe and proper condition and must exercise reasonable care in the inspection of his vehicle to discover any defects which may prevent its proper operation, and he is chargeable with knowledge of any defects which such inspection would disclose. He is thus liable for injuries which are shown to have resulted from conditions which he knew or in the exercise of reasonable care should have known were so unsafe as to endanger others using the highways even though the particular injury in question may not have been foreseen. *Burnett v. Avera,* 203 So.2d 788, 790 (Miss.1967); *Moore v. Taggart,* 233 Miss. 389, 102 So.2d 333 (1958). On his way to Baton Rouge to pick up the heavy tractor or end loader, Mr. Condict noticed that the tires on his 1967 flatbed truck were badly worn, as he admitted in his pretrial deposition. He testified that they "looked awful"; he knew that the recommended total gross weight or load limit of the truck was 18,000 pounds, including the truck itself, and that the end loader alone weighed approximately 18,000 pounds. He nevertheless traveled to Baton Rouge and loaded this heavy tractor onto this truck despite the unsafe and dangerous condition of the tires. Certainly, as an ordinary and reasonable person he knew or in the exercise of reasonable care should have known that it was probable that the worn out tires which he had aired to 70 pounds prior to loading the tractor thereon, were likely to "blow out" when this heavy load was placed thereon, and this is precisely what happened. Condict was thereby negligent, and it was this negligence which resulted in the end loader being thrown from the truck and the truck becoming disabled on the highway, occupying part of the lane intended for westbound traffic.

This negligence continued over, creating the dangerous condition which proximately caused this collision, irrespective of his compliance with the foregoing statutory requirements. *Huff v. Boyd, supra* ; *Whitten v. Land, supra.*

For the foregoing reasons and each of them, the defendant was negligent, and his negligence was the sole proximate cause of the collision of his disabled vehicle with the Prestridge pick-up and of the injuries to the Prestridges which resulted in plaintiff's foregoing payments to them.

## THE COVERAGE ISSUE

We turn now to the question of whether Louis Condict was insured against liability at the time of the foregoing collision by the plaintiff, Aetna, or whether he was an uninsured motorist. In the event of the former, the plaintiff's claim against him must fail and he would be entitled to recover against it on his counterclaim for a reasonable attorney's fee and the cost of defending this action which he had requested of Aetna. If he was an uninsured motorist, Aetna, by paying the foregoing claim to the Prestridges, was subrogated to their rights against Condict pursuant to Miss.Code 1972 Ann. § 83–11–107. Pursuant to the terms of the Prestridge policy, plaintiff paid to the Prestridges the total amount of $9,000.00 under the uninsured motorist provision and $1,636.00 for medical services rendered to them as a result of their injuries, making a total payment of $10,636.00.

Sometime prior to the collision in question, Aetna, through its agent, E. H. Crump & Co. of Memphis, Tennessee, issued to the

defendant, a resident of Memphis, an automobile liability policy covering Condict's use of a 1973 Chevrolet ½ ton pick-up truck, effective April 12, 1973 through April 12, 1974.

On August 2, 1973, Condict purchased the 1967 Chevrolet C–60 2½ ton flatbed truck which was involved in this collision. Although he had verbally told Donald C. Gordon, an employee of Crump with whom he had been acquainted for approximately 13 years and who had for most of that period of time written all of the insurance coverage on his personal property, including his vehicles, that he intended to buy a truck and "would want to insure it", he nevertheless did not inform Gordon or any other employee of Crump or Aetna that he had actually purchased or was using the 2½ ton flatbed truck prior to the time of the collision, and testified herein that at the time of the collision he did not think that he had insurance on the truck. Gordon's first knowledge of the defendant's ownership of the 1967 flatbed truck was subsequent to the collision when a claims clerk in Crump's office told him that she had had a call with reference to the accident involving the truck and the Prestridge vehicle, had checked Crump's files and found no coverage for this truck although she had found coverage of the 1973 Ford pick-up truck owned by the defendant. Gordon and Condict then talked on the telephone approximately six or seven days after the collision, and Gordon, with full knowledge of the collision and the details thereof, was told by a claims department secretary for Crump to issue an endorsement to the basic policy covering the 1973 pick-up truck, which retroactively extended insurance coverage on this policy to include the 2½ ton flatbed truck in question, effective August 10, 1973, three days prior to this collision. This endorsement (Ex. P–9) was countersigned by an employee of Crump and issued on December 12, 1973, and the premium for this additional coverage was paid by the defendant to Crump through Gordon in cash on December 13, 1973. It was Gordon's testimony that he "was of the impression that

Aetna was going to afford this retroactive coverage" to Louis Condict.

Condict heard nothing further from either Aetna or Crump until this suit was filed against him on December 23, 1974, at which time he made a demand on Aetna to defend him, which it refused to do. Condict then counter-claimed against the plaintiff for reimbursement of a reasonable attorney's fee and costs expended by him in defending this action.

Prior to the time that the suit was filed, pursuant to an interoffice communication dated October 15, 1974 from R. A. Porier, Superintendent of plaintiff's Nashville office to E. H. Crump Agency, Aetna by endorsement (Ex. D–1) voided its coverage on the Chevrolet truck, but neither it nor Crump ever sent Condict a copy of this cancellation endorsement or notified him thereof, and the $170.00 premium which had been paid by him to Crump, Aetna's agent, on December 13, 1973, was never refunded; Gordon testified that Condict's account with Crump was credited on April 12, 1974, however, the plaintiff was never informed of or made aware of this purported credit.

The issue is whether the December 12 endorsement, effective August 10, 1973, prior to the date of the collision afforded insurance coverage on the defendant's 1967 Chevrolet flatbed truck by virtue of its issuance by Crump subsequent to its actual knowledge of the accident, having charged and collected a premium therefor.

The plaintiff contends that Crump had no authority to issue this retroactive endorsement to cover a loss which had already occurred, because this was beyond its authority and contrary to public policy. The defendant, a Tennessee resident, argues that under the law of the state of Tennessee, where the policy and endorsement were written, and whose law is controlling herein, *Moore v. New Amsterdam Cas. Ins. Co.,* 199 F.Supp. 941 (E.D.Tenn.1961), that Crump was the agent of the plaintiff which is bound by ordering and issuing the endorsement and collecting a premium therefor, and that in the absence of fraud, as

here, plaintiff is precluded from denying coverage under the principles of waiver and estoppel as annunciated by the Courts of Tennessee.

The general rule is that if at the time an application for insurance is made, there has been a loss that neither the applicant nor the insurer knew of, a recovery may be had on a policy subsequently issued which was antedated so as to include the time at which the loss occurred, and this is so even though there is no "lost or not lost" clause therein, if an intention to do so appears. An equally established rule is that where one applies for insurance knowing that a loss has already occurred, conceals this fact, and procures a policy to be antedated so as to cover the period when the loss did occur, the policy is void because of fraud or concealment and no recovery can be had thereon. 4 Appleman, Insurance Law and Practice, § 2291 (1969); 43 Am. Jur.2d, Insurance, § 328 (1969); Annot., 132 A.L.R. 1325 (1941). It is also generally held that for there to be coverage, both the insured and insurer must be ignorant of the fact of the loss when the coverage is issued or policy made, and that an agent of the insurer has no authority to contract for liability on behalf of his principal by incurring liability for a loss which he knows has already occurred. *Arley v. United Pacific Ins. Co.,* 379 F.2d 183, 188 (9th Cir. 1967), cert. den. 390 U.S. 950, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968); *B. T. U. Insulators, Inc. v. Maryland Casualty Co.,* 175 So.2d 899 (La.Ct.App.1965); *Celina Mut. Casualty Co. v. Baldridge,* 10 N.E.2d 904, 906 (Ind.1937); *United States Casualty Co. v. Rodrigues,* 288 S.W. 487, 488 (Tex.Civ.App.1926); *Bankers Lloyds v. Montgomery,* 60 S.W.2d 201, 202 (Tex.1933); 4 Appleman, § 2291. *See also* Annot., 132 A.L.R. 1325, 1327 (1941). It has been stated that "To hold otherwise would be to hold that the money of an insurance company is at the disposal of the secretary, to be disbursed as he pleases, and without regard to whether claims presented are just or unjust." (citation omitted). *B. T. U. Insulators v. Maryland Casualty Co., supra.* This is so because the actions of the insurer's agent in effecting

insurance at a time when he knows a loss has occurred would be outside the limit of his authority and would not bind the insurer on such risk. 4 Appleman, § 2291 (and cases cited therein).

There is considerable authority, however, for the view that no legal obstacle prevents parties, if they so desire, from entering into a contract of insurance to protect against loss that may possibly have already occurred and that they have a right to assume obligations antedating the date of the contract if they so elect provided the contract was founded upon a consideration, not attended by fraud or concealment on the part of the insured. *United States v. Patryas,* 303 U.S. 341, 345–346, 58 S.Ct. 551, 82 L.Ed. 883, 886–887 (1938); *Continental Casualty Co. v. Industrial Commission,* 61 Utah 16, 210 P. 127 (1922); 132 A.L.R. at 1328. In *United States v. Patryas, supra,* the Supreme Court, in affirming the Court of Appeals for the Seventh Circuit which found for the plaintiff in an action on a veteran's reinstated war risk insurance policy, wrote:

> Even with the benefit of scrupulous good faith it is not always easy to determine with complete certainty whether or not total permanent disability exists. This uncertainty may lead an insurer, after his own investigation, and for adequate compensation, to treat unknown past and uncertain prospective disability, upon the same basis. This case is an illustration. Here, the government has never admitted that the veteran is totally and permanently disabled. It not only issued him a policy against such disability—with complete knowledge of his then condition—but in his continued contest has denied that the policy-holder was totally and permanently disabled at any time—before, when, or after the policy was issued. There was also a sharp conflict of evidence on this disputed fact.

> When a policy of disability insurance is issued after complete examination by insurer and full and fair disclosure by both parties, there is no legal reason why the insurer cannot contract to afford full pro-

tection against loss resulting from past as well as prospective disability.

303 U.S. at 345–46, 58 S.Ct. at 554.

### TENNESSEE LAW

Turning now from the above general principles of law to the law of the state of Tennessee which controls in this diversity case, it is necessary to first determine whether Crump was acting as the agent of Aetna or Condict when it, through its employees, with full knowledge of the collision in question antedated the liability insurance coverage by endorsement to Condict's policy to include Condict's 2½ ton flatbed Chevrolet truck on the date of this collision and was paid a premium therefor.

Section 56–705, Tennessee Code of 1968, Ann. provides, "Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured. . . ."

The foregoing statute was enacted because of unethical and sometimes corrupt practices on the part of insurance agents. *Industrial Life & Health Ins. Co. v. Trinkle,* 204 S.W.2d 827, 829 (Tenn.App.1947), *cert. den., petition for reh. den.,* 185 Tenn. 434, 206 S.W.2d 414 (Tenn.1947). *See also Accident & Cas. Ins. Co. v. Lasater,* 32 Tenn. App. 161, 222 S.W.2d 202, 205 (1949), *cert. den. by Tenn. Sup. Ct.* In *Trinkle,* the Court thoroughly and exhaustively discussed the foregoing statute as it has been judicially interpreted by the Courts of the State of Tennessee, stating that the Tennessee Legislature assumed the right to regulate the business of insurance and prescribe the manner in which it shall be conducted in that state, obviously intending to make insurance companies responsible for the acts of the persons who assume really to represent and act for them not only in matters relating to the application for insurance but in all matters relating to the policy issued, and to change the rule of law that an insured must at his peril know whether the person with whom he is dealing has the power he assumes to exercise or is acting within the scope of his authority, clearly intending to make the company responsible to the public for the acts of one whom it permits to solicit insurance in its own behalf. The Court went on to elaborate that all of the cases which have construed this statute "have given it the most liberal construction in favor of the insured. Under it the insurer has been held responsible for the representations of the agent in respect to terms not covered by the provisions of the policy, to perhaps an unusual degree", and that "[t]he knowledge of the agent under this section is the insurer's knowledge." (citing *American Nat. Ins. Co. v. McPhetridge,* 28 Tenn.App. 145, 187 S.W.2d 640 (1945)). 204 S.W.2d at 830.

It is noted that *Trinkle* was decided some twenty-nine years subsequent to the case of *Continental Ins. Co. v. Schulman,* 148 Tenn. 481, 205 S.W. 315 (1918), relied on by Aetna, which recognized that there are limitations on the powers of even general agents to bind their principals, holding that they must act within the apparent scope of their authority and may not bind their principals by doing a thing unusual or unheard of in the line of business since such is apparently beyond the scope of their authority. In *Schulman,* the Tennessee Supreme Court held that the evidence therein was undisputed that custom and usage in the industry permitted an agent to bind his company by a parole contract for only a few days but not for two months, and thus there was no coverage therein in the absence of the issuance of a policy covering a loss which occurred approximately two months subsequent to the agent's oral binder. It is this Court's opinion that *Schulman* must be restricted to its narrow factual setting, and in the case sub judice, there was no evidence offered by the plaintiff that the antedating of coverage by Crump was unusual or beyond the scope of its authority.

■ Thus, Crump was Aetna's general agent at the time that it issued the retroactive or antedated endorsement and collected a premium therefor; Crump's knowledge of the accident and apparently its details was

imputable to and thus the knowledge of Aetna; its collection of the premium for this endorsement was made on behalf of and inured to the benefit of Aetna; there was no misrepresentation, concealment or bad faith dealing by Condict with Crump and no charged or proved conspiracy between Crump's employees and Condict to defraud Aetna. Condict certainly had no reason to believe that Crump's knowledge of the collision in question would not be imparted to its principal, Aetna. *Cf. De-Ford v. National Life & Accident Ins. Co.,* 182 Tenn. 255, 185 S.W.2d 617 (1945). On the contrary, in the absence of fraud, Condict had the right to assume that Crump would impart to Aetna its information concerning the collision.

■ The doctrines of estoppel and waiver have been unqualifiedly recognized and applied by the Courts of Tennessee to enforce the performance of contracts, including insurance contracts, *Accident & Casualty Ins. Co. v. Lasater, supra* 222 S.W.2d at 204. Also, the Courts of Tennessee hold that the effective date of an insurance contract may be antedated and that the policy shall take effect from such·date agreed upon, inasmuch as a policy of insurance is a voluntary contract and any agreement that is not contrary to law or public policy may be included therein. An insurer may impose such conditions as it desires and the insured may take them or go without the policy, as it may choose. *Berry v. Prudential Ins. Co.,* 23 Tenn.App. 485, 134 S.W.2d 886, 891–892 (Tenn.App.1939), *cert. den.* Tenn.Sup.Ct.; *Whitney v. Union Central Life Ins. Co.,* 47 F.2d 861, 864 (8th Cir. 1931). So too, if an insurance company wishes to assume *possible liability* for an accident which has already occurred, having been apprised thereof by ·the applicant-insured, without any concealment, fraud or bad faith on his part, as here, then this Court knows of no public policy or principle of law which would prevent it from doing so by antedating coverage on another vehicle of its insured and collecting a premium therefor, as was done in the case sub judice.

■ The Supreme Court of the State of Texas has in a recent persuasive opinion rejected the proposition that an insurance company can never assume the risk of a loss that has already occurred. *Burch v. Commonwealth County Mutual Ins. Co.,* 450 S.W.2d 838 (Tex.1970). It is not necessary for this Court to decide whether it is against public policy or beyond the apparent scope of the authority of a general agent to insure a *known loss* which both the insured and insurer through its general agent have knowledge of, because in the case sub judice there had been no *known loss,* and then the writing of the coverage endorsement did not place the insurance company in the position of promising unconditionally to pay a substantial amount of money for a known property loss in exchange for a much smaller premium. On the contrary, Aetna through Crump, its general agent, with full knowledge of the *potential* liability of Condict and its *possible* exposure therefor decided to assume that risk for a consideration received by it, at a time when it probably was not aware of the fact that it was also the insurer of the Prestridge automobile. Aetna voluntarily and for a consideration entered into the agreement to provide liability coverage on the Condict vehicle on the date of the collision, and in the absence of any concealment, fraud or misrepresentation on the part of Condict, it is bound to comply with its coverage agreement.

As previously stated, Aetna has not charged or attempted to prove any fraud, misrepresentation or bad faith on the part of Condict; did not charge or offer any evidence of any bad faith on the part of ·Crump through any of its agents or employees, including Gordon, or any conspiracy between Crump and Condict to defraud it. Gordon testified that he "was of the opinion that Aetna intended to afford this coverage" at the time that it was retroactively extended. Aetna has offered no evidence whatsoever as to the circumstances surrounding the execution of the endorsement in question but apparently has elected to conceal or at least not disclose any of the circumstances in connection therewith,

which is evidenced by its inter-office communication of October 15, 1974 (Ex. D–1, page 2) in which it confirmed a telephone conversation of the previous day in which "we discussed the flat cancellation of endorsement number one dated August 10, 1973 that we processed in our office". In the second paragraph thereof R. A. Poirier, Superintendent of Aetna's Nashville Claims Department stated "I won't go into any details as you and I both know the history behind this endorsement and the overall handling of the account." Aetna apparently did not desire to, and did not, enlighten this Court concerning the "history" or "overall handling". Aetna apparently takes the position, which this Court rejects, that Crump had no authority to issue the coverage endorsement or that it was contrary to public policy and should be voided. If the insurer ascribes any corrupt motives to Crump or any of its employees, such was without the knowledge, connivance or procurement of Condict, who had at all times dealt openly and in good faith, and if the plaintiff has any recourse, it is against Crump and/or its employees. *Cf., Industrial Life & Health Ins. Co. v. Trinkle, supra,* 204 S.W.2d at 832.

In summary, this Court finds that at the time of the collision involving the Prestridge and Condict vehicles which resulted solely from the negligence of the defendant Condict, that Aetna had through its authorized general agent, Crump, afforded liability coverage on the date of the collision to cover the Condict flatbed truck by the endorsement of August 10, 1973 and collecting a premium therefor; that the writing of this endorsement was within the ostensible or apparent authority of the plaintiff's general agent; that it was not contrary to public policy for Aetna to voluntarily agree with Condict to afford liability coverage exposing itself to *possible* liability thereunder and agreeing to undertake a defense of Condict in the event of a suit against him by the Prestridges, which was not filed except through this subrogation suit by Aetna; under the terms of its liability insurance policy it owed the defendant the duty to defend this action, which included the furnishing of legal representation and reimbursement for reasonable costs incurred in defending this action, all as a result of its voluntary contractual obligation and/or the principles of waiver and estoppel; and as a matter of law and equity it should not be permitted to cancel coverage by belatedly issuing the cancellation endorsement of October 15, 1974 without informing Condict thereof, returning the premium to him or actually informing him that his account with Crump was being credited.

Thus, the plaintiff is not entitled to recover against the defendant Louis Condict, and its complaint shall be dismissed with prejudice at its cost. The counter-claimant, Louis Condict, is entitled to recover a judgment against Aetna in the amount of $2500.00 reasonable attorney's fees and $238.15 reasonable costs incurred in defending this suit, or a total amount of $2738.15, together with its cost herein incurred.

A Judgment conforming with the foregoing Findings of Fact and Conclusions of Law, approved as to form by counsel for both sides, shall be presented to this Court within the time prescribed by the local Rules.