NO.   94-077

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

RICK FOLEY, Individually, and as the
Personal Representative of the Estate
of FLORENCE FOLEY,, and  RICK FOLEY, as
Guardian Ad Litem for the Estate of
Nichole Foley, a Minor,

       Plaintiff and Appellant,

  v.

HARRISON AVENUE MOTOR CO., a Montana
corporation;  JOHN DOE NO. 1, a foreign
corporation,  JOHN DOE NO. 2, a foreign
corporation;  JOHN DOE NO. 3, a Montana
corporation;  and JOHN DOES NOS. 4
through 8,

      Defendants and Respondents.

FILED

OCT 25 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
              In and for the County of Silver Bow,
              The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Richard J. Foley, Pro Se, Butte, Montana

      For Respondent:

      R. D.  Corette  and  William  O'Leary,  Corette,
      Pohlman, Allen, Black And Carlson, Butte, Montana

Submitted on Briefs:  August 4, 1994

Decided:  October 25, 1994

Filed:

_____
              Clerk

Chief Justice J. A. **Turnage** delivered the Opinion of the Court.

Rick Foley **individually,** as personal representative of the Estate of Florence Foley, and as Guardian Ad **Litem** for the Estate of **Nichole** Foley,. a minor, appeals from a jury verdict in the Second Judicial District, Silver Bow County, in favor of defendant Harrison Avenue Motor. We affirm.

The issues are:

1. Whether **the** District Court improperly commented on the evidence during trial in the presence of the jury.

2. Whether the District Court properly instructed the jury based on the evidence presented and the applicable law.

On March 1, 1988, Florence Foley purchased a 1983 Mercury Cougar from Harrison Avenue Motor Co. (Harrison Avenue) in Butte, Montana. The automobile was five years old and the odometer showed approximately 47,000 miles. Prior to placing the automobile on the lot for sale, Harrison Avenue inspected and serviced the vehicle.

Mrs. Foley used the Mercury Cougar to commute between her home in Butte and her place of employment in Fairmont Hot Springs, Montana. Mrs. Foley drove the Mercury Cougar over 21,000 miles in the fifteen months she owned the vehicle.

On June 10, 1989, Mrs. Foley and a co-worker left Fairmont Hot Springs following their shift and went to a bar in Walkerville, a suburb of Butte. The co-worker testified that Mrs. Foley had several drinks between approximately 5:00 p.m. and **9:30** p.m., at which time the co-worker left the bar with her husband.

2

On the afternoon of June 11, 1989, Mrs. Foley's dead body was discovered lying next to the 1983 Mercury Cougar in her closed garage. The car's ignition switch was in the "off" position and the driver's seat was partially reclined. An investigation by the Butte-Silver Bow Law Enforcement Agency uncovered no criminal activity. An autopsy determined that Mrs. Foley died from carbon monoxide poisoning.

An inspection of the Mercury Cougar conducted after Mrs. Foley's death revealed that approximately eighteen inches of the exhaust system had broken from the rear of the vehicle, resulting in the automobile exhaust discharging near the left wheel-well rather than behind the vehicle. The inspection also uncovered several small holes and separations between the trunk and the left rear quarter panel. The Butte-Silver Bow coroner determined the cause of death to be carbon monoxide poisoning resulting from the faulty exhaust system.

Foley brought this action against Harrison Avenue claiming breach of warranty, negligent infliction of emotional distress, strict liability in tort, and negligence. Harrison Avenue moved for summary judgment on all claims. The court granted Harrison Avenue's motions for summary judgment on all claims except negligence. The negligence claim was tried by a jury, which returned a verdict in favor of Harrison Avenue. Foley appeals.

Issue 1

Did the District Court improperly comment on the evidence during trial in the presence of the jury?

Foley claims that the District Court improperly commented on the evidence during trial and in the presence of the jury. Foley called an expert witness to testify to the carbon monoxide levels recorded in the Mercury Cougar during tests run after the accident. Counsel for Harrison Avenue objected to a line of questions concerning federal carbon monoxide emission regulations. Counsel claimed the evidence sought was irrelevant and that there was no evidence in the record which established the Mercury Cougar was in the same condition at the time the tests were run as when Mrs. Foley bought the vehicle. Counsel for Foley responded to Harrison Avenue's objection by stating that Harrison Avenue had admitted it did not test the Mercury Cougar for emission levels prior to selling the vehicle. He insisted that by failing to determine whether or not the vehicle's emission complied with federal regulations, Harrison Avenue had brought the federal emission regulations into controversy. The District Court sustained Harrison Avenue's objection, stating:

> Now, just a minute. I realize what Mr. **Rask** [owner of Harrison Avenue Motor] said, but you haven't shown that he had a duty to buy the equipment and to do that emissions [testing] and so **I'm** going to sustain the objection at this point. The question here is whether he did a reasonable inspection. . . . **[T]here** is no duty that--does a reasonable inspection include the testing of the emissions from every vehicle that he sells or that sort of thing? And there is no evidence in this record

4

that that's part of the duty. . . .  So the objection is sustained.

Counsel for Foley immediately objected, claiming the District Court had improperly commented on the evidence. The judge replied, ". . . I'm explaining to you why I'm sustaining the objection."

This Court has long held that a judge should refrain from commenting on the evidence in the presence of the jury.  State v. Fuller (1906), 34 Mont. 12, 26, 85 P. 369, 374. However, not every statement made by the court constitutes an impermissible comment on the evidence.  The fact that a district judge makes incidental remarks concerning evidence presented at trial in the presence of the jury does not by itself entitle the appellant to relief.

In the instant case, the court's comments consist of the judge's rationale for sustaining an objection.  The court merely explained to Foley's counsel why it had sustained Harrison Avenue's objection.  Counsel for Harrison Avenue objected to the line of questioning concerning federal emission standards, claiming such standards were irrelevant.  The court explained that since Foley had not presented any evidence that a reasonable inspection by a used car dealer included an emissions test, evidence of emission standards at the time of the sale was irrelevant.  The court's statements were permissible to explain why it felt the line of questioning was improper.

We hold that the District Court did not improperly comment on the evidence during the trial in the presence of the jury.

Likewise, for a comment by the court to give rise to reversible error, such comment must affect the substantial rights of the party. Rule 61, M.R.Civ.P. When reviewing a claim of improper remarks by a trial judge, we must review the comments in relationship to the record as a whole. Adams v. Davis (1963), 142 Mont. 587, 592, 386 P.2d 574, 577. Although the District Court may have been able to explain its ruling in another manner, Foley has failed to establish how the comments substantially prejudiced his case. The record is void of any evidence which creates a duty for a reasonable used car dealer to do emission checks on vehicles before selling them. Foley failed to present an argument that the District Court's comments substantially prejudiced his rights. See Rule 61, M.R.Civ.P.

We conclude that the District Court's statement did not constitute reversible error.

Issue 2

Did the District Court properly instruct the jury based on the evidence presented and the applicable law?

The District Court has discretion when deciding how to instruct a jury, taking into account the theories of the parties, and we will not overturn that decision absent an abuse of discretion. Arnold v. Boise Cascade Corp. (1993), 259 Mont. 259, 267, 856 P.2d 217, 222; Mannix v. Butte Water Co. (1993), 259 Mont. 79, 98, 854 P.2d 834, 846. When determining whether a jury was properly instructed, we will consider the instructions as a whole

and in light of the evidence presented at trial.  Brown v. North Am. Mfg. Co. (1978), 176 Mont. 98, 114, 576 P.2d 711, 721.

Foley takes issue with two jury instructions given by the District Court.  First, Foley objects to Instruction No. 17, which states:

> A used car dealer owes a duty to discover and repair any defects which are patent or discoverable in the exercise of ordinary care.  However, the used car dealer's duty does not extend to completely dismantling an automobile and then reassembling it before its resale.  The duty only requires the used car dealer to use reasonable care to ascertain whether the car it sells is equipped with the minimum essentials for safe operation.

This instruction was derived from two cases.

In Rogers v. Hilger Chevrolet Co. (1970), 155 Mont. 1, 465 P.2d 834, we held that the defendant, a used car dealer, "had a duty to discover and repair any defects which were patent or discoverable in the exercise of ordinary care." Rogers, 465 P.2d at 837.  This duty did not, however, extend to "completely dismantling an automobile and then reassembling it" in order to discover such defects.  Rogers, 465 P.2d at 838.  We reiterated this rule in Kopischke v. First Continental Corp. (1980), 187 Mont. 471, 480-81, 610 P.2d 668, 673.

In view of our previous case law, Instruction No. 17 is an accurate reflection of Montana law and was an appropriate jury instruction in the case at bar.  Foley's own evidence establishes that in order to discover one of the claimed "defects," namely the cracks and holes in the trunk of the Mercury Cougar, it was necessary to remove the carpet from the floor of the trunk.  Jury

7

Instruction No. 17 is thus appropriate as applied to the facts and the law in this case.

Foley likewise claims error with Instruction No. 25, which states:

> Florence Foley, as the owner of a motor vehicle, owed a duty to maintain her **motor** vehicle in a reasonably safe condition.

Foley claims that Instruction No. 25 shifts the burden relating to the safety of the vehicle from the seller to the owner. Foley also **claims** that the instruction was taken from a case out of context and is not applicable to the facts in this case.

Jury Instruction No. 25 is taken from Aetna Cas. & Sur. Co. v. Condict (S.D. Miss. 1976), 417 F.Supp. 63. Aetna involved a vehicle owner's duty to maintain his vehicle for the protection and safety of third parties. Aetna, 417 F.Supp. at 69. Harrison Avenue proposed, and the District Court adopted, the language from Aetna to be applicable to the case at bar. We see no reason why the rule from Aetna is not applicable to vehicle owners in general. It is not unduly burdensome to require a vehicle owner to maintain his or her vehicle in a reasonably safe condition. Such a duty is consistent with an individual's general duty of ordinary care and was appropriate under the circumstances.

Jury Instruction No. 25 does not shift a burden from the seller to the buyer, but rather creates concurrent duties. The seller of used automobiles has a duty to discover and repair defects which are patent and discoverable through a reasonable

8

inspection. After the vehicle has been sold, the owner has a duty to maintain the vehicle in a reasonably safe condition. The jury instructions, when read as a whole, do not shift a burden from the seller to the buyer, but rather suggest separate and distinct duties for each party.

The jury was properly instructed concerning the parties' respective duties.. Jury Instruction No. 17 explained the extent and scope of Harrison Avenue's duty to inspect and repair its vehicles before sale. Jury Instruction No. 25 explained to the jury Mrs. Foley's duty to maintain her vehicle after she purchased it. We conclude that Instruction No. 25 did not shift any burden to the plaintiff and that the jury instructions, taken as a whole, are an accurate reflection of the law.

We affirm.

_____
Chief Justice

We concur:

_____

_____
Justices

9

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur with the majority's conclusion that the judicial statements objected to in this case were not impermissible comments on the evidence.

I dissent from that part of the majority opinion which concludes that the jury was properly instructed and that plaintiff was not prejudiced by the instructions given to the jury.

The majority relies on our decisions in *Rogers v. Hilger Chevrolet Co.* (1970), 155 Mont. 1, 465 P.2d 834, and *Kopischke v. First Continental Corp.* (1980), 187 Mont. 471, 610 P.2d 668, to support its conclusion that Jury Instruction No. 17 was appropriate. However, neither of these cases were concerned with the appropriateness of similar language in an instruction to the jury. Therefore, they are not authority for the majority's conclusion.

It is true that in *Rogers,* this Court included, in dictum, the language complained of by plaintiff. It is also true that that loose language was repeated in a lengthy discussion of used car dealers' duties found in *Kopischke.* However, the mere fact that the language was included in discussions found in prior cases does not make it the proper substance of a jury instruction. In fact, by including that language, the District Court disregarded our clear admonition in *Hunsaker v. Bozeman Deaconess Foundation* (1978) , 179 Mont. 305, 333, 588 P.2d 493, 509, where we stated that:

10

Another problem that this Court frequently confronts is that counsel or the trial bench too often draft instructions in the literal language of the opinions of this Court or the courts of other jurisdictions. While occasionally a statement in an opinion may also be a good jury instruction, we emphasize that opinions are not designed to be jury instructions. We are confident that the trial bench, together with counsel, if they take sufficient time and effort, can draft instructions that are better jury guides to the law than the literal language taken from court opinions. We encourage the bench and the bar to take the time to do so.

In this case, the objectionable language was that part of Instruction No. 17 which stated that: "However, the used car dealers duty does not extend to completely dismantling an automobile and then reassembling it before its resale."

That language constituted an inappropriate comment by the District Court on plaintiff's claim and must surely have confused the jury regarding the nature of plaintiff's claim. It was never plaintiff's position that the defendant in this case had a duty to dismantle the automobile which it sold to plaintiff's decedent, then inspect the disassembled parts and reassemble it before resale. It was simply plaintiff's position that there was technology available which would enable used car dealers to easily inspect for carbon monoxide leakage prior to the sale of used cars.

While the above comment may have been a correct statement of the law based on loose language found in *Rogers* and *Kopischke*, it had no relevance to the factual issues in this case, and in fact, implied to the jury that plaintiff's claim was based on a duty which the law did not impose on defendant. It distracted the jury

11

from the real issues which it should have been deciding, it was not supported by the 'evidence, and it should not have been given.

Even accurate statements of law should not be given to a jury where to do so creates an issue of fact unsupported by evidence and which would tend to mislead or divert the minds of the jurors from the real factual issues. *See Diversified Management, Inc. v. Denver Post, Inc.* (Colo. 1982), 653 P.2d 1103, 1110; *Koehn v. RD. Werner Co., Inc.* (Colo. Ct. App. 1990), 809 P.2d 1045, 1049.

Jury Instruction No. 17 would have been more appropriately included in defendant's final argument than in an instruction on the law given by the District Court. It was a perfect example of what we discussed in *Hunsaker* when we held that:

> We note also that counsel frequently draft instructions at the lastmomentwith little thought given as to whether they are fair and accurate statements of the law. They are frequently drafted from an adversary position and as a result they tend to unfairly benefit one of the adversaries. That is not the purpose of jury instructions. Jury instructions are no place to make final arguments. In addition to being easily understood, instructions should be a fair statement of the law and not slanted to the side of one adversary or the other.

*Hunsaker*, 588 P.2d at 509.

The error of giving Jury Instruction No. 17 was compounded by the District Court's Instruction No. 25 which set forth the duty of plaintiff's decedent. That instruction provided that the decedent had an unqualified duty to maintain her vehicle in a reasonably safe condition. It provided no exception where the defect was latent and undiscoverable, other than by dismantling her vehicle.

12

In other words, the combination of instructions numbered 17 and 25 placed a higher standard of care for inspection and maintenance of the subject vehicle on the unsophisticated consumer than on the defendant who engaged in the business of inspecting and selling vehicles and who employed a full-time mechanic to assist it in discovering and repairing defects. This result is the exact opposite of the respective burdens that were established in *Kopischke* where we held that:

> "The used car dealer is in a better position, by reason of his opportunity, than his average customer to discover what defects might exist in any particular car to make it a menace to the public. We are of the opinion it is not too harsh a rule to require these dealers to use reasonable care in inspecting used cars before resale to discover these defects, which the customer often cannot discover until too late." *Gaidty Motors v. Brannon* [(Ky. 1953)], 268 S.W.2d [627] at 628-629.

Further,

> ". . . expectations of quality and durability will be lower for used goods, commensurate with their age, appearance and price. However, safety of the general public demands that when a used motor vehicle, for example, is sold for use *as a serviceable motorvehicle* (and not as junk parts), absent special circumstances, the seller be responsible for safety defects whether known or unknown at time of sale, present while the machine was under his control. Otherwise, the buyer and the general public are bearing the enterprise liability stemming from introduction of the dangerously defective used vehicle onto the public highways. Public policy demands that the buyer receive a used chattel safe for the purpose intended (where no substantial change will occur prior to reaching the buyer or foreseeable consumer) . . . [.]" *Turner v. International Harvester-Company* [(1975)], 336 A.2d [62] at 69.

*Kopischke,* 610 P.2d at 674.

13

Other than Jury Instructions No. 17 and 25, and the court's general standard of care instruction, there were no other instructions to the jury regarding the respective duties of the parties. Therefore, the effect of the court's instructions was to tell the jury that plaintiff's decedent was absolutely liable for the safety of her vehicle, but that the dealer, who was in a better position by reason of his training and facilities, was only liable for defects which were readily apparent.

The combination of these instructions did not, as suggested by the majority, create reasonable concurrent duties. They imposed a higher standard of care on this unsophisticated consumer than on the more knowledgeable dealer.

What has, in fact, occurred in this case is that opinion language related to specific facts from previous cases has been taken out of context and used to construct jury instructions which, when applied in the factual context of this case, totally distorted the respective duties of the parties. The majority has unwittingly given its stamp of approval to this rearrangement of the tort law based on nothing more than the premise that if the language was included in prior decisions of this Court, it must be okay. I am anxious to see how they distinguish the next case that comes here under similar circumstances.

The effect of the court's instructions and the majority's opinion is to ignore traditional principles of negligence and the effect that a person's knowledge and training has on the standard of care imposed. Therefore, I dissent from the majority opinion.

14

For the reasons stated, I would reverse the judgment of the District Court and remand this case to the District Court for retrial with proper instructions to the jury.

_____
ust'ce

October 25, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Richard J. Foley
3120 Josephine
Butte, MT 59701

R. D. Corette
CORETTE, POHLMAN, ALLEN, BLACK & CARLSON
P. 0. Box 509
Butte, MT 59703

ED SMITH
CLERK OF THE! SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy